## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| YAHYA ABDULMALIK, | : | |
| Plaintiff, | : | Civil Action No.  12-3340 (RBK) |
| v. | : | |
| JOHNNY N. PITTMAN et al., | : | |
| Defendants. | : | **MEMORANDUM OPINION AND ORDER** |

---

This matter comes before the Court upon: (a) Plaintiff's application for extension of time to file his appeal, see Docket Entry No. 5;[1] and (b) Plaintiff's application to proceed in forma pauperis on appeal from this Court's prior decision, see Docket Entry No. 6, and it appearing that:

1.      On June 1, 2012, the Clerk received Plaintiff's submission styled as a notice of removal. See Docket Entry No. 1.  The submission:

   a.      informed this Court that Plaintiff was asserting jurisdiction under his "Ministersconsils Diplomats" perceptions, which he seemingly derived, by means of logic not entirely clear to this Court, from the First and Fourteenth Amendments, see id. at 1;

   b.      was reduced to the terminology and unique argot commonly used by the participants in the "redemptionist/sovereign citizenship" movement who correlate their socio-political position to the Barbary Treaties in general and to the United

---

[1]  Certain statements in Plaintiff's application for extension of time to appeal could be construed as his motion for reconsideration of this Court's prior decision.  Those statements are addressed accordingly.

States' Treaty with Morocco of 1786 in particular, <u>see</u>, <u>generally</u>, Docket Entry No. 1; but

c.    in the parts amenable to this Court's understanding, indicated Plaintiff's interest in removing a state court civil suit for damages commenced against Plaintiff on the grounds of Plaintiff's alleged negligence that resulted in a car accident and physical injuries suffered by a certain individual.  <u>See</u> Docket Entry No. 3, at 6-7 (explaining the same in detail).

2.    The submission arrived accompanied by Plaintiff's application to proceed in the anticipated removed action <u>in</u> <u>forma</u> <u>pauperis</u>.  <u>See</u> Docket Entry No. 1-3 (indicating that Plaintiff receives monthly food stamps assistance and monthly welfare cash support in the amount of $168, but maintaining that Plaintiff had no possessions and was, in addition, homeless).

3.    This Court, therefore, issued a memorandum opinion and order explaining to Plaintiff: (a) invalidity of his reliance on the Treaty with Morocco and analogous inapposite provisions; (b) inappropriateness of Plaintiff's resort to the argot he selected; and (c) insufficiency of his challenges in light of Rule 8 requirement for short and plain statement.  <u>See</u> Docket Entry No. 3, at 1-6.  Then, turning to what appeared to be Plaintiff's interest in having the state court negligence action (where he was named as defendant) removed to this District, the Court explained to Plaintiff that he established no jurisdictional basis for removal, since the underlying state negligence action did not entail a federal question and did not provide the Court with diversity jurisdiction.  <u>See id.</u> at 9-11.  Therefore, the Court directed the Clerk to remand the state negligence action to state

2

forum.  See id. at 11.  However, being mindful of Plaintiff's initial references to certain clauses of the First and Fourteenth Amendments, the Court invited Plaintiff to state his constitutional claims, if any, in accordance with the requirements of Rule 8 and without resort to incomprehensible argot or reliance on legal provisions having no relevance to Petitioner's challenges, such as the Treaty with Morocco.  See id. at 11-12 (allowing Plaintiff sixty days to submit his amended pleading and directing the Clerk to serve Plaintiff with a blank civil complaint form in order to facilitate Plaintiff's endeavors to that effect).

4.    Since Plaintiff's original submission presented the Court solely with an application indicating his interest in removal of state negligence action, and since such removal was denied, the Court: (a) did not reach the issue of whether Plaintiff's monthly income of food stamps and $168 in cash rendered him eligible for proceeding in forma pauperis in this matter; and (b) reserved such determination in the event Plaintiff elected to submit his amended pleading articulating federal question claims amenable to the Court's understanding.  See, generally, Docket Entry No. 3.  Pursuant to this Court's order, the Clerk administratively terminated this matter.

5.    Plaintiff did not submit his amended pleading.  Rather, four days later, Plaintiff submitted his motions at bar.

a.    Plaintiff's first motion, Docket Entries Nos. 5 and 5-1, referred to the now-remanded-to-state-forum negligence action, asserted that Plaintiff lost all his possessions and became homeless as a result of Hurricane Sandy and requested

3

additional ninety days to file his appeal as to the Court's remand decision.[2] <u>See</u>

<u>id.</u> In addition, Petitioner asserted that he must necessarily be in complete

diversity with his New-Jersey-domiciled adversaries who instituted state-court

negligence action against him because Plaintiff was neither owning nor renting

real estate in the State of New Jersey. <u>See id.</u> at 3-4 (stressing Plaintiff's alleged

homeless status). However, the diversity inquiry does not turn on such technical

niceties as a real estate deed or lease. <u>See</u> <u>Washington v. Hovensa LLC</u>, 652 F.3d

340, 344 (2011) ("A party's citizenship is determined by her domicile, and the

domicile of an individual is his true, fixed and permanent . . . place of habitation .

. . to which . . . he has [a current] intention of returning") (citations and internal

quotation marks omitted). Therefore, Plaintiff's current domicile in New Jersey,

regardless of his alleged homeless status, necessarily defeats complete diversity.

<u>See</u> <u>Cassell v. City of Philadelphia</u>, 350 F. App'x 611, 613-14 (3d Cir. 2009) (a

---

[2] The Court is not entirely clear as to how Plaintiff could have lost all his valuable possessions as a result of Hurricane Sandy since, according to his original <u>in forma pauperis</u> application, he did not have any valuable possessions <u>ab initio</u>. Analogously, the Court is unclear as to how Plaintiff could have become homeless as a result of Hurricane Sandy if, according to his original <u>in forma pauperis</u> application, he was already homeless at least four months prior to the hurricane tragedy. In addition, the Court notes, in passing, that Plaintiff's motion: (a) asserted that this Court dismissed Plaintiff's submission on the basis of racial bias; (b) reiterated Plaintiff's position that he deemed himself a "Moorish" national and, thus, was entitled to a certain preferential treatment; (c) repeated Plaintiff's claim that a reference to him by his official name violates either Plaintiff's "Moorish" beliefs or his legal rights as they were perceived by Plaintiff; and (d) reasserted Plaintiff's position that his rights under the Treaty with Morocco were violated in some unspecified fashion, etc. <u>See, generally</u> Docket Entry No. 5-1. Plaintiff's allegations of racial bias do not warrant a written discussion, being facially frivolous. The invalidity of Plaintiff's belief that he was entitled to a preferential treatment because of his assertion of "Moorish" roots, as well as the invalidity of Plaintiff's reliance on the Treaty with Morocco, were already extensively detailed in this Court's prior decision and another repeat of the same appears superfluous.

plaintiff who "resided" only in hospitals and homeless shelters was not in

diversity with local police officers); <u>Cox-Cordova v. Cox</u>, 2012 U.S. Dist. LEXIS

94856 (D. Utah June 13, 2012) (a homeless litigant cannot create a basis for

diversity jurisdiction by simply asserting that he is a "floater" and plans to keep

drifting to different locales in the future since "a 'floating intention" to [change]

domicile does not prevent the acquisition of [the current] domicile") (quoting

Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 1983)); <u>Cloyce v. Macy's Dep't</u>

<u>Store</u>, 2005 U.S. Dist. LEXIS 41676, at *7-8 (S.D.N.Y. Aug. 29, 2005) ("every

person, even the homeless or transient, must have a domicile somewhere, [e.g. his

current] acquired state of citizenship") (citing see <u>Willis v. Westin Hotel Co.</u>, 651

F. Supp. 598, 603 (S.D.N.Y. 1986), which relied on <u>Desmare v. U.S.</u>, 93 U.S.

605, 610 (1877)).[3]

b.      Plaintiff filed a Notice of Appeal, in accordance with Federal Rule of Appellate

Procedure 3, on November 16, 2012.[4]  <u>See</u> Docket Entry No. 5.  A district court is

permitted to grant an extension of time to file a notice of appeal if the moving

"party shows excusable neglect or good cause."  Fed. R. App. P. (4)(a)(5)(A)(ii).

---

[3]   For the purposes of the proceedings at bar, Plaintiff expressly associated himself with
Bellmawr, New Jersey, by designating this locale as his current address, <u>see</u> Docket Entry No. 1,
at 1; <u>accord</u> Local Rule 10.1 ("[t]he initial pleading . . . of any party [must state the party's
actual] address"), and even the complaint in state-court negligence action was too sent to him in
Bellmawr, New Jersey.  <u>See</u> Docket Entry No. 1-2,at 2.  Thus, for the purposes of diversity
inquiry, Plaintiff is domiciled in New Jersey.

[4]  A notice of appeal "must be filed with the district clerk within 30 days after entry of the
judgment or order appealed from."  Fed. R. App. P. 4(a)(1)(A).  Pursuant to Federal Rules of
Appellate Procedure 26(b) and 4(a)(5)-(6), only the district court is empowered to permit an
extension of time to appeal.

In order to determine whether neglect is "excusable," the court might weigh several factors.  These factors include "the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Kanoff v. Better Life Renting Corp., 350 F. App'x 655, 657 (3d Cir. 2009) (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 388 (1993)).[5]  These factors "do not establish a mathematical formula," because our determination must ultimately be "an equitable one."  Id. at 657.

c.    Here, there is no reason to anticipate that Defendants would be prejudiced by an extension, since the remand of state-court negligence action was already executed, and Plaintiff expressed no interest in asserting any constitutional or other federal claims.   However, Plaintiff offers the Court no facts establishing "excusable neglect."   Moreover, the issue of whether Plaintiff is acting in good faith or has a "good cause" appears even more problematic.  The only assertion Plaintiff makes is that he was affected by Hurricane Sandy, but his post-Sandy circumstances are identical to those existing many months prior to the hurricane.  The Court, therefore, is left to question the sincerity of Plaintiff's argument and finds Plaintiff's request for ninety-day extension wholly unwarranted.  However, presuming that Plaintiff's statement as to his homeless status is true and being

---

[5]  "The 'good cause' prong is reserved for events over which the filing party has no control."  Kanoff, 350 F. App'x at 657 n

mindful of the hardships associated with one being a homeless person, the Court finds a modest extension of time warranted. The Court, therefore, will allow Plaintiff thirty days from the date of entry of this Memorandum Opinion and Order to file his appeal.

d.    Plaintiff's second motion is seeking grant of <u>in forma pauperis</u> status for the purposes of said appeal. <u>See</u> Docket Entry No. 6.

e.    Federal Rule of Appellate Procedure 24 provides, in relevant part, as follows:

(a)    Leave to Proceed <u>in Forma Pauperis</u>.

   (1)    Motion in the District Court. Except as stated in Rule 24(a)(3), a party to a district-court action who desires to appeal <u>in forma pauperis</u> must [initially] file a motion in the district court. The party must attach an affidavit that:

      (A)    shows in the detail prescribed by Form 4 of the Appendix of Forms the party's inability to pay or to give security for fees and costs;

      (B)    claims an entitlement to redress; and

      (C)    states the issues that the party intends to present on appeal.

   (2)    Action on the Motion. If the district court grants the motion, the party may proceed on appeal without prepaying or giving security for fees and costs, unless a statute provides otherwise. If the district court denies the motion, it must state its reasons in writing.

   (3)    Prior Approval. A party who was permitted to proceed <u>in forma pauperis</u> in the district-court action . . . may proceed on appeal <u>in forma pauperis</u> without further authorization, unless . . . the district court . . . certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed <u>in forma pauperis</u> . . . .

7

Fed. R. App. P. 24 (a).

f.      Here, Plaintiff's motion does not contain any affidavit claiming his entitlement to

redress and stating the issues he intends to present on appeal.  Moreover, this

Court, on its own, fails to find any claim Plaintiff could raise in good faith.

Finally, the Court note the discrepancy in Plaintiff's original in forma pauperis

application (stating that Plaintiff was receiving monthly food stamps and monthly

cash support of $168) but his current motion asserting no income or support of

any kind.[6]  Since no in forma pauperis status was granted to Plaintiff for the

purposes of the proceedings at bar, and Plaintiff's applications on the record do

not provide the Court with a valid basis to grant Plaintiff this status for the

purposes of appeal, Plaintiff's motion, Docket Entry No. 6, will be denied.[7]

IT IS, therefore, on this ____28th____ day of ____November____, 2012,

ORDERED that the Clerk shall reopen this matter for the purposes of this Court's

examination of Plaintiff's motions, Docket Entries Nos. 5 and 6; and it is further

---

[6] Notably, just a few months prior to commencement of the instant matter, Plaintiff appealed two other dismissals of his actions.  Both these dismissals were rendered by the United States District Court for the Eastern District of Pennsylvania, and both dismissals were with regard to Plaintiff's deficient attempts to remove state proceedings instituted against him to federal fora.  Notably, in each of these two removed matters, Plaintiff prepaid his filing fee of $350.  The first such payment took place about seven months prior to Plaintiff's commencement of the instant action, and another such payment took place half a year prior to Plaintiff's commencement of the instant matter.  See Centralized Infractions Bureau et Al V. Abdulmalik, Civil Action No. 11-7632 (MAM) (E.D.Pa), Docket Entry No. 1; see also Centralized Infractions Bureau et Al V. Abdulmalik, Civil Action No. 11-7213 (TJS) (E.D.Pa), Docket Entry No. 1. These payments cast additional doubt as to veracity of Plaintiff's position that he is unable to prepay his filing fee in this matter.

[7] Such denial does not prevent Plaintiff from seeking in forma pauperis status from the Court of Appeals.

8

ORDERED that Plaintiff's application for extension of time to appeal is granted to the extent that Plaintiff's appeal must be filed within thirty days from the date of entry of this Memorandum Opinion and Order; and it is further

ORDERED that, to the extent Plaintiff's application for extension of time to appeal was intended to operate as Plaintiff's motion for reconsideration of this Court's determination that Plaintiff and Defendants are not in complete diversity, Plaintiff's motion is granted in form and denied in substance, and the Court's prior finding that the Court is without subject matter jurisdiction to entertain the state-court negligence action commenced against Plaintiff shall remain in full force;[8] and it is further

ORDERED that Plaintiff's application to proceed in forma pauperis on appeal from this Court's decision is denied.  Such denial is without prejudice to Plaintiff's seeking in forma pauperis status from the Court of Appeals; and it is further

ORDERED that the Clerk shall serve this Memorandum Order and Opinion upon Petitioner by means of regular U.S. mail; and it is further

ORDERED that the Clerk shall serve this Memorandum Order and Opinion upon the Clerk for the United States Court of Appeals for the Third Circuit, accompanying such service with a notation reading "SERVICE EXECUTED FOR INFORMATIONAL PURPOSES ONLY. THE INSTANT MATTER WAS COMMENCED BY THE LITIGANT WHO INITIATED

---

[8] The Court of Appeals held that a litigant's motion for reconsideration should be deemed "granted" when the court decides to review the decision and address the merits rather than the mere procedural propriety.  See Pena-Ruiz v. Solorzano, 281 F. App'x 110 (3d Cir. 2008). However, the fact of the court's review does not prevent the court from reaching a disposition identical to the decision previously reached upon examination of the original application.  See id.

USCA INDEX NUMBERS 12-1178 and 12-1646, AND WHO FILED A NOTICE OF APPEAL

IN THE ABOVE-CAPTIONED MATTER"; and it is finally

      ORDERED that the Clerk shall close the file on this matter by making a new and separate

entry on the docket reading, "CIVIL CASE TERMINATED."


                              s/Robert B. Kugler                

                             **ROBERT B. KUGLER**

                             **United States District Judge**